LARSEN IMPORTING CORP. *v.* UNITED STATES

**No. 7709.**—Invoice dated Bole (Ntel), Switzerland, May 6, 1941.
Certified May 7, 1941.
Entered at New York, N. Y., July 9, 1941.
Entry No. 701809.

(Decided June 16, 1949)

*Lane & Wallace* (*William H. Fox* of counsel); *James W. Bevans,* associate counsel; for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

LAWRENCE, Judge: This appeal relates to certain watch hands imported from Switzerland designed for use as replacements in repairing watches. They were entered at certain *per se* invoice prices, less varying discounts depending on the quantity purchased, plus majorations or increases of 10 and 14 percent, less a trade or wholesaler's discount of 25 percent, less a cash discount of 5 percent, packed. They were appraised at the same *per se* invoice prices, plus the majorations or increases of 10 and 14 percent, less only the cash discount of 5 percent, packed.

There is no dispute as to the *per se* prices, the majorations of 10 and 14 percent, or the cash discount of 5 percent and packing.

I am concerned here only with the question whether the quantity discount and the trade or wholesaler's discount were properly disallowed by the appraiser, the plaintiff contending that they should be deducted in order to arrive at the proper dutiable values of the watch hands.

At the trial, plaintiff offered the testimony of Robert Larsen, the owner of the importing company, two affidavits (collective exhibits 1 and 2), and a translation from the French to the English language of certain portions of the catalogs attached to said affidavits. This translation was marked collective exhibit 3. Defendant offered the testimony of the United States examiner who passed upon the merchandise, a photostatic copy of a commercial invoice covering watch hands received by another importer (exhibit 4), a letter from Universo, Ltd., to Mr. Perez Mereminsky of New York (exhibit 5), and two treasury attachés' reports (exhibits 6 and 7, respectively).

Mr. Larsen testified that in purchasing these watch hands:

\* \* \* An order is placed with a manufacturer, and when the order is completed by the manufacturer, the charges are based upon a definite price list which is applicable to all purchasers. Then we are entitled to a certain discount, depending on the quantity we buy of that particular item. Besides that, we, as wholesalers, are entitled to a general discount, which we call trade discount, of 25 per cent, and then there is a 5 per cent discount for payment upon receipt of the goods, or cash discount.

\* \* \* \* \* \* \*

Q. Now, do you know what, based upon your experience in buying over there, and visiting there, what is regarded as the smallest wholesale quantity?—A. I should say any wholesaler would buy five gross of hands.

Q. Would there be any quantity less than that that would be regarded as a wholesale quantity?—A. I would say legally one gross would be considered a wholesale quantity from the point of view of prices.

Furthermore, the witness Larsen, who was well-informed upon the subject in controversy, testified, in answer to a question as to why he did not buy in gross quantities or less, as follows:

The amount of work involved in ordering a number of hands and giving a full description, with all the technicalities involved, will exceed the eventual profit

in a gross of hands, so if it is worthwhile ordering a gross and putting machines in Switzerland in operation for us, because they are made specially to order, then *it would not warrant anything less than five gross for wholesale.*   [Italics supplied.]

This witness also testified that an association of watch hand manufacturers was formed in Switzerland about 1940 composed of all the watch hand manufacturers in Switzerland, and that he was advised at about that time that by common consent the association had accorded him "the standing of 25 per cent discount wholesaler." This testimony of the witness is in agreement with the information contained in collective exhibit 1, wherein the affiant states that:

At all times herein mentioned, the base prices in said catalogue have been subject to certain trade discounts, * * * being granted on the following basis:

| Classification | Discount |
|---|---|
| Wholesale dealers of first importance | 25% |
| Wholesale suppliers | 20% |
| Less important suppliers | 15% |
| Retailers | 10% |
| Small retailers | 5% |

Said exhibit also contains the following statement regarding the quantity discounts:

At all times herein mentioned, the base prices in said catalogue have been subject to certain quantity discounts, which were allowed to all Swiss and foreign buyers on the following basis:

| Minimum Quantity of Same Hands | Discount |
|---|---|
| 5 gross | 3% |
| 10 " | 5% |
| 25 " | 10% |
| 50 " | 15% |
| 100 " | 20% |
| 500 " | 22% |
| 1,000 " | 25% |

It is clear from the record that the trade or wholesaler's discounts of 5, 10, 15, 20, or 25 percent depended entirely upon the character, reputation, and standing of the purchaser. To allow any one of those discounts in finding the proper dutiable values of these watch hands would be a clear violation of the provisions of section 402 of the Tariff Act of 1930. In disposing of the case of *United States* v. *A. W. Faber, Inc.*, 21 C. C. P. A. (Customs) 290, T. D. 46817, which involved the question of whether or not a 5 percent discount should be allowed, our appellate court said:

How can it be said that the merchandise in the case at bar was freely offered to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade at a discount of 5 per centum from the list price of the merchandise when, as found by the trial court, only a part of such purchasers in the usual wholesale quantities and in the ordinary course of trade were offered such discount, viz,

those who would agree to purchases aggregating in value a specified minimum amount per year? It is clear to us that section 402 (c) does not permit the allowance of the 5 per centum discount here involved under the facts found by the lower court.

It is true that the appellate division of the Customs Court found that a majority of the sales made by the manufacturer were to firms entitled to the 5 per centum discount, but that is only saying that a *majority* of those purchasing in the usual wholesale quantities and in the ordinary course of trade, received said discount, while, to conform to the statute defining foreign value, the discount must be offered to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade.   [Italics quoted.]

The witness Larsen in this case testified that on account of the business he had done with members of the association, it was granting him a 25 percent discount; that he did not know whether all buyers from the United States who went to Switzerland to purchase watch hands would be accorded the 25 percent discount, but:

I know there are certain differentials, but I don't know exactly who is who and what is what.   It is like a confidential matter with them.   It is in the books in Bern, Switzerland, the capital.

\*          \*          \*          \*          \*          \*          \*

\* \* \* If I may explain, that means that people who are engaged seriously in that business, not chance buyers, but who make it their livelihood to import hands, whether they buy a small quantity today, or a larger quantity for certain numbers, does not enter into consideration, but what they consider is whether a person is a bona fide importer of watch hands; then they put him into a certain category.

JUDGE LAWRENCE:   In other words, the trade discount reflects the character, reputation and standing of the buyer?

THE WITNESS:   That is right.

It is apparent from the record before me that a majority, but not all, of those purchasing in the usual wholesale quantities and in the ordinary course of trade received one of these five trade discounts. However, in order to conform to the statute, the discount must be offered to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade.   A trade discount which is based upon and reflects only the character, reputation, and standing of the buyer cannot, under the statute, be allowed.

The question of what constitutes a wholesale quantity is a question of fact, concerning which witnesses may testify and documentary evidence may be submitted, but the question of what constitutes a *usual* wholesale quantity is one of law to be determined by the court from the evidence upon which the case has been submitted.

Although plaintiff's witness Larsen testified that "legally one gross would be considered a wholesale quantity from the point of view of prices," it should be noted that the witness was testifying regarding a wholesale quantity and not a usual wholesale quantity.   Further, it should be stated that what constitutes a wholesale quantity or a

usual wholesale quantity is not to be determined "from the point of view of prices."

Attached to collective exhibits 1 and 2 are schedules which, according to the respective affiants, embody complete lists of sales of watch hands 523, 593, and 605 made by Cosmo, S. A., and Universo, S. A., respectively, during the period with which I am here concerned, giving purchasers' names, number of gross per sale, catalog prices, majorations, and total discounts for each catalog number of watch hands. According to the record before me, Cosmo, S. A., and Universo, S. A., produce and sell approximately 90 percent of all watch hands made and sold in Switzerland.

An analysis of the lists of sales attached to the said affidavits shows that the major portion of the sales and offers for sale in wholesale quantities of the watch hands in question were in quantities of 5 gross. Therefore, 5 gross constitutes the usual wholesale quantity. In arriving at this conclusion, I have taken into consideration all of the sales listed in said schedules. *United States* v. *A. W. Faber, Inc.*, 21 C. C. P. A. (Customs) 290, T. D. 46817; *United States* v. *M. Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912; *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093; and *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466 (reaffirmed in 28 C. C. P. A. 166, C. A. D. 140).

The usual wholesale quantity having been determined, it is now incumbent upon me to ascertain the value at which such or similar merchandise was freely offered for sale to *all* purchasers.

As hereinbefore shown by the quotation from collective exhibit 1, the same being true as to collective exhibit 2, the affiants therein state that the base prices in said catalogs have "At all times herein mentioned" been subject to a 3 percent discount on a minimum quantity of 5 gross "of same hands," which was allowed to all Swiss and foreign buyers. As to item 593, however, this statement is contradicted by the list of sales attached to collective exhibit 2, which list shows four sales of 5 gross each (this being the usual wholesale quantity) without the allowance of any quantity discount. An anomalous situation likewise arises with regard to the watch hands known as item 523. Whereas the list of sales attached to collective exhibit 2 shows 2 sales of 5 gross of this item number with an allowance of 3 percent quantity discount, said list also enumerates 10 sales of from 6 to 34 gross without the allowance of any quantity discount. Evidently this is in clear contradiction of affiants' statements quoted earlier in this opinion as to the allowance of quantity discounts to all Swiss and foreign buyers of minimum quantities of 5 gross of the same hands.

The significance of the words "of the same hands" is explained by collective exhibit 3 which is a translation of pertinent portions of the

catalogs attached to collective exhibits 1 and 2. It appears that watch hands designated as items 523, 593, and 605 come in varying sizes and shapes within each item number. On this phase of the case, witness Larsen testified as follows:

Q. Do I understand that if you bought five gross of number 523, you would get that discount [3 percent quantity discount]?—A. That is right.

Q. And that would be true even though you took various shapes of hands in that category under that number, 523?—A. I would pay more on the basic price, *but the discount would be the same.*

Q. Because it was an assortment of that particular number?—A. That is right. [Italics supplied.]

Therefore, the statement in the affidavits (collective exhibits 1 and 2) that a 3 percent discount was allowed to *all* purchasers of a minimum quantity of 5 gross of the same hands of items 523 and 593 becomes a mere conclusion of the affiants which is controverted by facts appearing of record and should be given no weight in determining the price at which the watch hands were sold and freely offered for sale as provided in section 402 (c) and (d) of the Tariff Act of 1930. *United States* v. *Semon Bache & Co., supra.*

As to the watch hands known as item 605, the record, including the lists of sales, shows that a discount of 3 percent from the catalog prices was allowed to *all* purchasers who purchased in quantities of 5 gross, which quantity I have found to be the usual wholesale quantity.

Upon a full consideration of the record, I find as facts:

1. That the involved merchandise consists of watch hands, represented on the invoice accompanying the entry as items 523, 593, and 605, which were used in connection with repairing watches.

2. That the merchandise was entered at the invoice prices, less varying discounts depending on the quantities purchased, plus majorations or increases of 10 percent and 14 percent, less a trade or wholesaler's discount of 25 percent, less a cash discount of 5 percent, packed, and was appraised at the same invoice prices, plus majorations or increases of 10 percent and 14 percent, less a cash discount of 5 percent, packed.

3. That the merchandise was freely offered for sale and sold for home consumption in the same manner and at exactly the same prices at which it was freely offered for sale and sold for exportation to the United States.

4. That the quantity in which the major portion of sales in wholesale quantities of these watch hands was made, in accordance with the provisions of section 402 (c) and (d) of the Tariff Act of 1930, was 5 gross.

5. That the trade or wholesaler's discount was not allowed to *all* purchasers in the usual wholesale quantities and in the ordinary

course of trade but was gauged according to the character, reputation, and standing of the individual buyer.

6. That the price at which item 605 was freely offered for sale and sold for home consumption and for export to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal market of the country from which exported, was the unit invoice prices, plus majorations or increases of 10 percent and 14 percent, less a 3 percent quantity discount, less a 5 percent cash discount, packed.

7. That the price at which items 523 and 593 were freely offered for sale and sold for home consumption and for export to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal market of the country of exportation was the unit invoice prices, plus majorations or increases of 10 percent and 14 percent, less a 5 percent cash discount, packed.

As matter of law, I conclude:

1. That the usual wholesale quantity of the three items of watch hands in question is 5 gross.

2. That the proper dutiable foreign and export value, as those values are defined in section 402 (c) and (d) of the Tariff Act of 1930, of the watch hands designated as item 605, is as set out in finding of fact No. 6, *supra.*

3. That the proper dutiable foreign and export value, as those values are defined in said section 402 (c) and (d), *supra,* of the watch hands designated as items 523 and 593, is as set out in finding of fact No. 7, *supra.*

Judgment will be entered accordingly.