LARSEN IMPORTING CORP. *v.* UNITED STATES

UNITED STATES *v.* LARSEN IMPORTING CORP.

No. 7855.

Entry No. 701809.

Third Division, Appellate Term

(Decided August 2, 1950)

Lane & Wallace (*William H. Fox* of counsel) for the importer.
David N. Edelstein, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the United States.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: These are cross-applications for review of the decision and judgment of Judge Lawrence in *Larsen Importing Corp.* v. *United States*, 22 Cust. Ct. 465, Reap. Dec. 7709.

The merchandise herein consists of watch hands intended for repair purposes imported from Switzerland. They were entered at the invoice prices, less varying discounts depending on the quantity purchased, plus majorations or increases of 10 and 14 per centum, less a trade discount of 25 per centum, less a cash discount of 5 per centum, packed. They were appraised at the invoice prices, plus majorations of 10 and 14 per centum, less the cash discount of 5 per centum, packed.

Larsen Importing Corp., the plaintiff below, hereinafter called the importer, claimed in the court below that it was entitled to a trade or wholesaler's discount of 25 per centum and a quantity discount of 3 per centum. The court held, however, that the trade discount could not be allowed since it was not granted to all purchasers in the usual wholesale quantities in the ordinary course of trade but depended upon the status of the purchaser and that the quantity discount of 3 per centum could be allowed only as to item 605, since this discount was not allowed on all sales of 5 gross of items 523 and 593.

The importer now concedes that the trade discount of 25 per centum was properly disallowed, but claims that it is entitled to a trade discount of 5 per centum and a quantity discount of 3 per centum on all items. The Government claims, on the other hand, that the trade discount of 3 per centum should not have been allowed on item 605.

At the trial the importer called Robert Larsen, who testified that at the time of these importations he was operating under the name of Larsen Importing Corp.; that he purchased the watch hands involved herein from Cosmo Corporation, the Swiss manufacturer; that the Cosmo Corp. and another concern known as Universo have 80 to 90 per centum of the business in this commodity. He described the method of purchase as follows:

* * * An order is placed with a manufacturer, and when the order is completed by the manufacturer, the charges are based upon a definite price list which is applicable to all purchasers. Then we are entitled to a certain discount, depending on the quantity we buy of that particular item. Besides that, we, as wholesalers, are entitled to a general discount, which we call trade discount, of 25 per cent, and then there is a 5 per cent discount for payment upon receipt of the goods, or cash discount.

As to the trade discount, the witness stated that there is an Association of Watch Hand Manufacturers in Switzerland which imposes sales rules and works out prices in the most minute detail as to base price, additional charges, and discounts; that such prices apply both to sales for home consumption and for export; that in order to obtain a trade discount, a purchaser must be passed upon by the association; that the highest discount is 25 per centum given to first-class importers, those who do a big business in watch hands; that the discount is not based on quantity but on the standing of the importer in the trade. In this connection, the witness testified as follows:

X Q. Do you know whether members of this association, including your exporter, freely offer their merchandise to buyers in the United States other than the eight firms you stated?—A. I know that anybody has the right to buy in Switzerland. They cannot refuse, even if a simple watchmaker would send in an order. They must sell him. Those are the rules and regulations.

X Q. If such an order were received by one of the members, the price that this watchmaker would pay would be what; the price set by the association?—A. Catalogue price.

X Q. Together with the discounts, if any, that are mentioned in the catalogue?—A. The quantity discount, yes, but in order to obtain a wholesale standing, or to be entitled to this trade discount, one has to be passed on in Bern, the capital.

    \*       \*       \*       \*       \*       \*       \*

X Q. So that if such a concern, this new concern you have just developed, would go to your manufacturer, he would have to pay a certain price for the merchandise; is that correct?—A. It will start off with the catalogue price. That is the basic price for everybody, but the manufacturer will intercede in his behalf; will state the facts in Bern at the meeting of the association, and then if his facts are correct there is no discrimination against anybody in particular, and he will be entitled to the same as we are.

    \*       \*       \*       \*       \*       \*       \*

X Q. So that, it depended upon your status as to whether or not you get a 25 per cent wholesaler's discount or a lower discount or no discount?—A. Yes, sir.

The importer introduced into evidence an affidavit of Emile Perrenoud, administrator of Cosmo, S. A. (plaintiff's collective exhibit 1). It is stated therein:

3. Attached to this affidavit is a catalogue of Cosmo, S. A., entitled, "Tarif des Aiguilles d'Exportation pour Rhabillage" (Export tariff of watch hands for repair), effective during the first half of 1941, showing base prices of watch hands manufactured and sold by Cosmo, S. A.

    \*       \*       \*       \*       \*       \*       \*

6. At all times herein mentioned, the base prices in said catalogue have been subject to certain trade discounts, in addition to above quantity discounts, said trade discounts being granted on the following basis:

| Classification | Discount |
|---|---|
| Wholesale dealers of first importance | 25% |
| Wholesale suppliers | 20% |
| Less important suppliers | 15% |
| Retailers | 10% |
| Small retailers | 5% |

    \*       \*       \*       \*       \*       \*       \*

22. In SCHEDULE B–2 (summarizing sales on the basis of trade discount classification) those sales on which no trade discount was allowed were made at net prices, because at the time of purchase the status of the purchaser (as described in paragraph #6) had not been determined by the officials (as described in paragraph #8).

The only sales listed in Schedule B–2 are those in which a discount of 25 per centum was allowed.

The importer also introduced into evidence an affidavit of W. Berthoud and G. Ramseyer, managing directors of Universo, S. A. (plaintiff's collective exhibit 2). Paragraphs 3 and 6 thereof contain the same statements as paragraphs 3 and 6 of the affidavit of Emile Perrenoud. Paragraph 18 contains a summary of sales made, showing that in each case the trade discount of 25 per centum was allowed.

In this connection, the Government introduced into evidence a letter from Universo, S. A., to Perez Mereminsky, dated September 2, 1947 (defendant's exhibit 5), which contains the following statement:

Replying to your remark, regarding the wholesale dealers' remittance, we regret very much, we are not authorized to grant you such a remittance, for your concern is not stated on the list of the wholesale dealers entitled to enjoy such a remittance.

We must point out that the wholesale remittances have been stated by the "Délégations Réunies" (Reunited Delegations) on the proposal of the "Commission paritaire" (Reciprocal commission), and which are obligatory, according to Federal Department of Public Economy' regulations, at Bern, which has given to the Swiss Watch Chamber the power to controll [sic] the application of this measure by all exporters. The remittances granted depend of [sic] the annual turnover in watch hands before the year 1936, with the Swiss exporters. Seeing that you were not our customer at this time, we cannot give the proof that you have bought from us important quantities of watch hands.

A report of Treasury Representative Charles Kruszewski, dated July 13, 1939, states that he was informed by the secretary of the Association of Watch Hand Manufacturers that a certain firm was receiving the 25 per centum so-called wholesaler's discount, but that in view of violations committed by the firm, its name was being stricken from the list of firms having the benefit of the wholesale rebate.

It appears from the foregoing that allowance of trade discounts of 5, 10, 15, 20, or 25 per centum depended upon the status of the purchaser; that such status was determined by the Association of Watch Hand Manufacturers; that a discount which had been granted could be revoked; that a purchaser who had not been passed upon by the association would pay the net prices without receiving any discount.

Subdivisions (c) and (d) of section 402 of the Tariff Act of 1930 provide that dutiable value, whether foreign or export, is the price at which the merchandise is freely offered for sale to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade.

The controlling factor is not the price paid by wholesalers, or any other class of customers, but the price at which the merchandise is offered to *all* in the usual wholesale quantities. *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216; *United States* v. *A. S. Neuberger and American Glanzstoff Corp.*, 19 C. C. P. A. 96, T. D. 45241; *United States* v. *A. W. Faber, Inc.*, 21 C. C. P. A. 290, T. D. 46817; *Stone & Downer Co.* v. *United States*, 21 C. C. P. A. 479, T. D. 46958; *United States* v. *Mexican Products Co.*, 28 C. C. P. A. 80, C. A. D. 129.

The importer claims that while the 25 per centum discount was not granted to all purchasers, the 5 per centum discount was, and that any sales in which no discount was allowed were not in the ordinary course of trade. In the affidavit of Emile Perrenoud and in the testimony of Robert Larsen, it is stated that sales are made at net prices where the status of the purchaser has not been determined. That is the ordinary method of trading in watch hands. It is apparent that trade discounts were not granted to *all* purchasers in the usual wholesale quantities but only to such as had been passed upon by the association. Therefore, such trade discounts may not be deducted in determining dutiable value.

As to the quantity discounts, the affidavit of Emile Perrenoud contains the following statement:

5. At all times herein mentioned, the base prices in said catalogue have been subject to certain quantity discounts, which were allowed to all Swiss and foreign buyers on the following basis:

| Minimum Quantity of Same Hands | Discount |
|---|---|
| 5 gross | 3% |
| 10 " | 5% |
| 25 " | 10% |
| 50 " | 15% |
| 100 " | 20% |
| 500 " | 22% |
| 1,000 " | 25% |

The affidavit of W. Berthoud and G. Ramseyer contains a similar statement as does the Cosmo catalog attached to plaintiff's collective exhibit 1.

The witness Robert Larsen testified that the quantity discount is based upon the quantity purchased; that such discounts are freely offered to all purchasers who purchase in those particular quantities; that a purchaser is entitled to the 3 per centum discount if he buys 5 gross of the same number of a particular category even though he takes various shapes in that category under that number.

The witness testified that any wholesaler would buy 5 gross of hands but that, in his opinion, legally 1 gross would be considered a wholesale quantity from the point of view of prices. An examination of the sales listed in plaintiff's collective exhibits 1 and 2 dis-

closes that the greatest number of sales in each item number was in quantities of 5 gross. Five gross is therefore the usual wholesale quantity. *United States* v. *M. Minkus*, 21 C. C. P. A. 382, T. D. 46912; *Jenkins Brothers* v. *United States*, 25 C. C. P. A. 90, T. D. 49093.

These exhibits also disclose that as to item numbers 523 and 593 the discount of 3 per centum was not allowed in all cases where quantities of 5 gross were purchased. This contradicts the statement in the affidavits (plaintiff's collective exhibits 1 and 2) that the base prices were at all times subject to a 3 per centum discount on a minimum quantity of 5 gross of the same hands. Where all the facts upon which a statement is made have been disclosed, the statement, as such, is a conclusion of the witness and is outweighed by the facts themselves from which the court draws its own conclusion. *Jenkins Brothers* v. *United States, supra*. The assertion of a fact without substantial evidence to support it is entitled to little weight. *Transatlantic Shipping Co., Inc.* v. *United States*, 28 C. C. P. A. 19, C. A. D. 118; *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 964, Reap. Dec. 5272.

The importer attempts to explain the discrepancy between the statement in the affidavits and the list of sales by claiming that the discount was not allowed as to certain sales of 5 gross because they were not sales of the same assortment of hands. The sales in plaintiff's collective exhibits 1 and 2 are listed under catalog numbers 523, 593, and 605, but no separate listing is made as to those on which no discount was allowed although the order was for 5 gross. The importer's assertion is not supported by the record.

The Government claims that the discount of 3 per centum should not be allowed as to item 605 on the ground that plaintiff's collective exhibit 1 fails to disclose sales for home consumption and that, therefore, the evidence is incomplete and insufficient to overcome the presumption of correctness attaching to the appraised values. However, paragraph 17 of the affidavit of Emile Perrenoud (plaintiff's collective exhibit 1) and paragraph 17 of the affidavit of W. Berthoud and G. Ramseyer (plaintiff's collective exhibit 2) state that the schedules attached contained *complete* lists of sales during the first half of 1941. There is nothing in the record to contradict these statements; therefore, it may be inferred that where no sales for home consumption were listed, none were made. The record establishes that a discount of 3 per centum was allowed as to all sales in quantities of 5 gross of item 605.

Upon the record as presented, the quantity discount of 3 per centum is allowed as to item 605 but is not allowed as to items 523 and 593.

Upon the record herein, we find as facts:

1. That the merchandise involved herein consists of watch hands

intended for repair purposes imported from Switzerland, represented. on the invoice accompanying the entry as items 523, 593, and 605.

2. That the merchandise was entered at the invoice prices, less varying discounts depending on the quantities purchased, plus majorations or increases of 10 and 14 per centum, less a trade discount of 25 per centum, less a cash discount of 5 per centum, packed, and was appraised at the invoice prices, plus majorations of 10 and 14 per centum, less the cash discount of 5 per centum, packed.

3. That the merchandise was freely offered for sale and sold for home consumption in the same manner and at exactly the same prices at which it was freely offered for sale and sold for exportation. to the United States.

4. That the quantity in which the major portion of sales in wholesale quantities of these watch hands was made, in accordance with the provisions of section 402 (c) and (d) of the Tariff Act of 1930, was 5 gross.

5. That the trade or wholesaler's discount was not allowed to all purchasers in the usual wholesale quantities and in the ordinary course of trade but was granted according to the status of the purchaser as determined by the Association of Watch Hand Manufacturers; that purchasers whose status had not been passed upon by the association bought at the catalog prices, receiving no trade discount.

6. That the price at which item 605 was freely offered for sale and sold for home consumption and for export to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal market of the country from which exported, was the unit invoice prices, plus majorations or increases of 10 per centum and 14 per centum, less a quantity discount of 3 per centum, less a cash discount of 5 per centum, packed.

7. That the price at which items 523 and 593 were freely offered for sale and sold for home consumption and for export to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal market of the country of exportation was the unit invoice prices, plus majorations or increases of 10 per centum and 14 per centum, less a cash discount of 5 per centum, packed.

As a matter of law we conclude:

1. That the usual wholesale quantity in which these watch hands were bought and sold was 5 gross.

2. That the proper dutiable foreign and export value, as those values are defined in section 402 (c) and (d) of the Tariff Act of 1930, of the watch hands designated as item 605, is as set forth in finding of fact No. 6, *supra*.

3. That the proper dutiable foreign and export value, as those values are defined in section 402 (c) and (d) of the Tariff Act of 1930,

'of the watch hands designated as items 523 and 593, is as set forth in finding of fact No. 7, *supra*.

The decision of the trial court is affirmed and judgment will be rendered accordingly.