(Reap. Dec. 8469)

FISHER SCIENTIFIC COMPANY *v.* UNITED STATES

Entry No. 582, etc.

(Decided July 21, 1955)

*Jerome G. Clifford* for the plaintiff.

*Warren E. Burger* Assistant Attorney General (*Richard H. Welch* and *Daniel I. Auster*, trial attorneys), for the defendant.

EKWALL, Judge: These cases, which have been consolidated, involve importations of various types of analytical balances, with one exception, reappraisement No. 187910–A, which involves only special magnifiers for use with said balances. All were exported from Switzerland during the period between March 1949 and March 1952. The magnifiers were entered under duress. The magnifiers were appraised at Swiss francs 15 each, plus 31.25 per centum packed, whereas plaintiff claims the invoice values are the proper values. In the initial case, reappraisement No. 186965–A, which was entered under duress, the merchandise consisted of item No. 100 A5M. Appraisement was made at Swiss francs 2,400 each, plus packing Swiss francs 50 each. Plaintiff claims a value of Swiss francs 1,800.

The issues, with the exception of the issue of the sales tax, are the same as in *United States* v. *Fisher Scientific Company*, 40 C. C. P. A. (Customs) 164, C. A. D. 513. It has been agreed that there is no export value and that foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis of valuation.

The record in the earlier *Fisher* case, *supra*, was incorporated over objection of Government counsel.

In the incorporated case, the documentary evidence consisted of an original and a supplementary affidavit (exhibits 1 and 2, suit 4740) of Hans H. Mettler, a director of the firm which manufactured and exported the goods, together with a report of the United States consul at Zurich, Switzerland, (exhibit A). Attached to said exhibit A is a list of 13 sales, covering some of the principal ones made by said firm during the period from April 1948 to February 1949. The merchandise there involved was exported between September 1948 and March 1949. In the instant case, in which the dates of exportation extended from April 1949 to and including March 1952, two affidavits by the same person were offered by plaintiff and received in evidence as exhibits 1 and 2 herein.

In the incorporated case, the entered values were affirmed by this court and the appellate court. The objection of the Government to

the admission of the earlier record related only to the extent of excluding that portion of such record which involved exhibit A, which is made a part of exhibits 1 and 2 in the instant case. Inasmuch as said exhibit A is now a part of the instant record, the court is of the opinion that it is immaterial whether or not it be excluded from the incorporated record.

Attached to the affidavit of Mr. Mettler (exhibit 1 herein) is a list of sales, which affiant states are in seven different categories. Six of these categories are sales of one each, consisting of sales to agents entitled to the wholesale price, irrespective of quantity; sales of demonstrator, modified, used or worn, and outdated or damaged models; sales to educational, scientific, and nonprofit-making institutions for their own use at special discounts; sale at a trade fair at reduced price to promote trade; sale to a favored customer for his own use and not for resale; and sales to purchasers for their own use and not for resale. The remaining group consists of sales in quantities of 7, 5, and 6 each to purchasers for resale and to purchasers for their own use and not for resale. The sales to purchasers for resale and to purchasers for their own use and not for resale constitute the only sales therein cited that might be considered made in the ordinary course of trade. The sales to purchasers for resale and to purchasers for their own use and not for resale are stated to be five; one of 7, one of 6, and three of 5 models. All the remaining 31 transactions are sales only to purchasers for their own use and not for resale, each consisting of 1 model. The list of sales fails to show names or addresses of the purchasers.

Affiant also states that there was no transaction in the ordinary course of trade in any quantity less than five to any purchaser who bought for the purpose of resale.

This affidavit also confirms every statement and everything contained in exhibit A, suit 4740, the report on investigation of market value, and in the price lists, dated September 1, 1948, and May 7, 1949. Affiant further states that the Swiss sales tax was not included in the unit selling price, but was charged extra; that the tax attached only when the balances were sold to unregistered dealers or to purchasers who bought for their own use and consumption; and that balances were not freely offered for sale for home consumption in Switzerland in quantities of five or more at prices which included the tax.

Exhibit 2, which is by the same affiant, also has attached thereto copies of the affidavits (exhibits 1 and 2, suit 4740) and a photostat of the report, exhibit A, *supra*, together with copies of price lists of September 1, 1948, and May 7, 1949, all of which were part of the record in suit 4740. There is also attached to this exhibit a price list of November 1, 1951, which is not translated and, therefore, is without probative value. Affiant further reaffirms and confirms

each and every statement and everything contained in said earlier affidavits (exhibits 1 and 2 in suit 4740), in the report on investigation of market value of E. Mettler analytical balances, and in the E. Mettler price lists, dated September 1, 1948, May 7, 1949, and November 1, 1951. Affiant further affirms that the statements and matter contained in said documents were equally valid from August 1, 1948, to October 31, 1951; that the statements contained in the price list, dated September 1, 1948, obtained and were equally valid from August 1, 1948, to and including May 6, 1949; that the matter appearing in the price list, dated May 7, 1949, obtained and was equally valid from May 7, 1949, to October 31, 1951; and that the statements contained in the price list, dated November 1, 1951, were equally valid from November 1, 1951, to September 2, 1953. Further, affiant affirms that all statements contained in the aforesaid documents were equally valid from November 1, 1951, to September 2, 1953, except as modified by the price list, dated November 1, 1951; except that, from and after the last-mentioned date, purchasers who bought for the purpose of reselling to others purchased in quantities of three or more balances of one or assorted models and never, in the ordinary course of trade, purchased in any quantity less than three of one or assorted balances; and except that, of all the sales made from and after November 1, 1951, to September 2, 1953, in quantities of three or more of one or assorted models to any and all purchasers, those who bought for resale to others and any other purchasers, the sales in quantities of three numerically exceeded and were more numerous than sales thereof in any other quantity. Affiant further affirms that these analytical balances were freely offered for sale and sold to all purchasers for home consumption in Switzerland as follows:

a) in quantities of five (5) or in quantities of more than five (5) of one or assorted models from August 1, 1948 to and including May 6, 1949 at the prices for quantities of five (5) or more set forth in the aforesaid price list dated September 1, 1948;

b) in quantities of five (5) or in quantities of more than five (5) of one or assorted models from May 7, 1949 to October 31, 1951 at the prices for quantities of five (5) or more set forth in the aforesaid price list dated May 7, 1949; and

c) in quantities of three (3) or in quantities of more than three (3) of one or assorted models from November 1, 1951 to the date hereof at the prices for quantities of three (3) or more set forth in the aforesaid price list dated November 1, 1951.

It is noted that no sale is listed in the above exhibit 2 or in any other documentary evidence of any sale for home consumption, at any price, for any quantity during the period subsequent to November 1, 1951. In fact, the last sale listed among the 61 sales is given under date of July 19, 1950. No sale is listed after that date. It is, therefore, apparent that the statement as to the major portion of sales subsequent to November 1, 1951, is without evidentiary value

and is a mere conclusion. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495.

On behalf of the Government, there were introduced three consular reports which were received and marked exhibits A, B, and C.

To summarize exhibits A, B, and C, it is sufficient to state that the first two relate to the prohibitions in the Swiss penal code, which Mr. Mettler's legal adviser considered rendered compliance with the United States Government's attempt to investigate the value of these analytical balances, contrary to the Swiss law. The third, exhibit C, dated November 24, 1953, states that Mr. Mettler replied in part to the questions transmitted by the Bureau of Customs, answering the inquiries and annexing a list of "all transactions of E. Mettler for home consumption in Switzerland for the two-year period from August 1, 1948 to July 31, 1950, * * * also * * * copies of our price lists dated September 1, 1948 and May 7, 1949 * * *." In this exhibit, the consul states as follows:

It will be noted that the tabulation of sales does not indicate the status of the purchasers, as requested. Furthermore, this tabulation is not in the form of an affidavit. In view of the Consulate General's previous experience in this case, it is considered inadvisable to request Mr. Mettler to comply more fully with the Bureau's instructions.

The list of 61 sales annexed is identical to the list of sales which form part of exhibit 1 herein.

In the incorporated record (suit 4740), the issue revolved around 13 sales, which comprised only a partial list of the exporter's sales. Those sales covered a period between April 14, 1948, and February 3, 1949, the merchandise there involved having been exported between September 1948 and March 1949.

In the instant case, the period of exportation was from April 1949 through March 1952. The evidence now before us consists of 61 sales made from August 10, 1948, to July 19, 1950. This list of 61 sales includes the 13 sales covered by suit 4740, with the exception of the sales listed for April 14, 1948, May 3, 1948, and July 30, 1948. The other 10 sales in suit 4740, although identifiable in this list of 61, can have no application herein, inasmuch as they were not made within the period involved in the instant appeals. No sales are listed from July 19, 1950, to March 15, 1952, which is a portion of the period of exportation here involved. It is, therefore, apparent that the 13 sales thus included are too remote to be considered in arriving at the statutory value of the instant merchandise, which involves the ordinary course of trade and the usual wholesale quantity. In view of this discrepancy, we must disregard any statements as to these 13 sales found in exhibit A, suit 4740, or in exhibits 1 and 2 in the instant case. Therefore, the classifications of "Retail Transactions" or "Wholesale Transactions" are of little or no evidentiary value in the instant case and cannot aid us in a determination of usual wholesale quantity,

the ordinary course of trade, or the dutiable value of the involved merchandise.

In the case of *The International Nickel Company* v. *United States*, 27 Cust. Ct. 415, Reap. Dec. 8034, the court used the following language:

Division of the price classifications into two categories—"Wholesale" and "Less Than Wholesale"—which are admittedly the witness' personal designations, is not accepted as a positive fact. On the contrary, the designations are considered mere conclusions by the witness in the light of the present record, and contribute little in the determination of a usual wholesale quantity. *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093, and *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466 (reaffirmed in 28 C. C. P. A. (Customs) 166, C. A. D. 140), supply abundant authority for the limitation placed on plaintiff's testimony.

The mere use of the word "wholesale" as a caption to a class of sales, such as plaintiff saw fit to apply, cannot be accepted as a final characterization of transactions, and thus become determinative in a judicial interpretation of the phrase, "usual wholesale quantities." Such use as plaintiff has made herein has been considered, as it should, as an element making up the ultimate finding from all of the evidence, but it cannot be taken as conclusive. To sustain plaintiff's theory on the matter of usual wholesale quantities, would be tantamount to laying down a legal yardstick in that field too easily controlled in its application by self-constructed catalogs or other similar publications. Despite the complete absence of any dishonest or sinister purpose, as is the case here, such a finding cannot be made.

Suit 4740 was decided upon the basis of the 13 sales, all of which were made prior to the sales involved in the instant case. That decision, therefore, cannot be considered determinative of the issue here presented, which involves importations made several months to several years thereafter.

The said 13 sales, being remote from the dates of exportation here involved, have no evidentiary value on the question of the usual wholesale quantity in the case before us.

It further appears that as to the sales of the merchandise covered by reappraisement 186965–A, the first shipment here involved, certain of those, viz, Nos. 2, 4, 5, 6, 7, 8, 13, 14, 20, 21, 22, 23, and 24, appear on invoices dated between September 16, 1948, and March 16, 1949, and were made prior to the date of exportation of that first shipment.

Therefore, the first 25 listed sales of the 61 sales cannot be considered in determining the usual wholesale quantity.

Of the remaining sales, the importer's affidavit, exhibit 1, shows that sales numbered 5, 6, 10, 28, 29, 41, 45, 48, 50, 51, and 54, and also 7, 8, 20, 22, 23, 27, 34, 35, 39, 47, 49, 53, 58, and 61 were not made in the ordinary course of trade. Therefore, considering the sales which were too remote and the sales not made in the ordinary course of trade 41 of the 61 sales must be eliminated from consideration.

As to the 20 remaining sales, which affiant characterizes as in the ordinary course of trade, three, numbered 25, 31, and 59, are stated

to be sales to purchasers for resale of five, six, and five balances, respectively. Sales numbered 26, 30, 32, 33, 36, 37, 38, 40, 42, 43, 44, 46, 52, 55, 56, 57, and 60 are sales to purchasers of one balance each for their own use, and not for resale.

Plaintiff contends that, in the ordinary course of trade, the usual wholesale quantity was five or more of one or assorted models from August 1, 1948, to October 31, 1951, and three or more of one or assorted models thereafter.

From an examination of the sales above set forth, it appears that only three sales, viz, No. 25 on June 7, 1949, No. 31 on October 6, 1949, and No. 59 on July 13, 1950, of five, six, and five balances, respectively, for resale, bear out plaintiff's claim that the usual wholesale quantity was five or more for the period up to October 31, 1951. If I were to accept the evidence as bearing out this claim, I would be forced to ignore the 17 sales made from June 29, 1949, to July 19, 1950, which were made in quantities of one to users. The evidence shows that, in the ordinary course of trade, both for purchasers' own use and for consumption, sales were made in only three instances in quantities of five or more, which is contended by the plaintiff to be the usual wholesale quantity prior to November 1, 1951. These sales were at the lowest prices given for the respective periods in the three price lists. That price was the same, whether for resale or for home use and consumption. Plaintiff contends that those three sales were made to purchasers for resale. In 17 instances, sales in the ordinary course of trade for resale as well as for own use and consumption, were made in quantities of one at the highest price appearing in the respective price-list periods, which price was the same whether for own use or for consumption. Plaintiff alleges these 17 sales were made to purchasers for their own use and consumption.

In the case of *American Shipping Co.* v. *United States*, 29 C. C. P. A. (Customs) 250, 257, C. A. D. 198, which involved X-ray grids for use with X-ray fluoroscopic apparatus, it was held that sales of one were in the ordinary course of trade, and the court considered such sales in arriving at the usual wholesale quantity and held them to be in the ordinary course of trade. We quote from the language of the court as follows:

It is difficult to understand how it can be contended, under the instant record, that the sales made to consumers were not in the ordinary course of trade. The ordinary course of trade shown by this record is to sell to both wholesalers and consumers and the fact that one kind of sales exceeds the others in number is of no importance. The sales in the instant case made to consumers were not isolated or restricted or exceptional in their character. It was the ordinary practice of this manufacturer, who was the sole manufacturer of this kind of goods, to sell both to wholesalers for retail and to consumers for consumption. We find no merit in this contention of appellant.

In the instant case, in view of the record, it seems reasonable that one balance sold to a user in the ordinary course of trade should be given consideration in arriving at the usual wholesale quantity.

The record contradicts the allegation in exhibit 1 that all the facts in exhibits 1 and 2 and exhibit A, a part of suit 4740 herein incorporated, were equally applicable during the entire period involved in the instant case. In addition to the partial list of sales presented in said suit 4740, there is now presented what is described as a complete list of sales. I must, therefore, consider any claim for usual wholesale quantity, or for the designation as "wholesale" or "retail" sale, as a conclusion of the affiant, where all the evidence is now of record. This was the reasoning of the court in *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093. There, the court said:

It is true that the affidavit of said Moncrieff states that sales to retailers for resale are not in the usual wholesale quantities, but this is merely a conclusion by him, drawn from the facts set out in detail in his affidavit. While a statement that a given quantity is or is not a usual wholesale quantity might in some circumstances be regarded as some substantial evidence of the fact, such a statement can have no weight as a statement of fact when all of the facts upon which the statement is made are disclosed. It then becomes merely a conclusion of the witness, which can have no weight with the court in determining what is a usual wholesale quantity.

See also *Lovell Dressel Co., Inc.* v. *United States*, 25 C. C. P. A. (Customs) 64, T. D. 49064; and *United States* v. *Semon Bache & Co.*, *idem* 387, T. D. 49466. In the instant case, as in the case of *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, the usual wholesale quantity is a material issue, and the designations given to the various sales by the affiant must be considered in connection with the evidentiary facts. The Court of Customs and Patent Appeals in suit 4740, herein incorporated, held that, upon the record there presented, the valuation would be the same whether the usual wholesale quantity were to be regarded as 5, 7, 10, or 20 balances and that the decision in the *Brooks Paper* case, *supra*, was not controlling. However, in the instant case, as above stated, I have a record which shows a different state of facts and involves different dates of exportation from those involved in the incorporated case and in which the statements as to what number constituted the usual wholesale quantity are not borne out by the evidence. To sustain affiant's contention that, prior to October 31, 1951, the usual wholesale quantity consisted of five or more of one or assorted models would necessitate ignoring the 17 sales which were made between June 29, 1949, and July 19, 1950. Plaintiff claims that these were not in the usual wholesale quantities in that they were made to users in quantities of one. To sustain this contention, the court must

accept the plaintiff's designation and classification of such buyers and sales as not "wholesale" buyers or sales at "wholesale."

In the case of *American Shipping Co.* v. *United States*, supra, the court used the following language:

If Congress had thought it was advisable not to emphasize "wholesale quantities" and to provide that the sales which should be taken as a basis of the value for appraisement purposes should be only those in which wholesale quantities were sold for resale, it would have been an easy matter for it to have done what appellant seeks to have us do.

\*      \*      \*      \*      \*      \*      \*

We see nothing in the context of the various provisions in different tariff acts enacted during the last hundred years, relating to "actual market value, or wholesale price" or any other value, to which our attention has been called by the importer, that indicates in the slightest degree that in the Tariff Act of 1922 or in subsequent tariff enactments it intended to confine the transactions relied upon as a basis for foreign value to those between the manufacturer and those who purchased for resale. On the contrary, it seems to us that the language, which was new in said section 402 (b), Tariff Act of 1922, and reenacted in section 402 (c), Tariff Act of 1930, suggests the opposite intention.

In the instant case, the record shows that the price was the same, whether for resale or for own use and consumption. I find the following statement in plaintiff's brief:

At all times it was and is the ordinary course of trade of the said E. Mettler to freely offer for sale and to freely sell analytical balances and parts thereof without restriction as to quantity, use, reslae [*sic*], price, disposition, or any other restriction or limitation, to purchasers who bought for their own consumption and to purchasers who bought them for the purpose of resale to others.

Sales were made in only two instances in quantities of five or more at the lowest prices stated for the respective periods in the three price lists in evidence. Such price was the same, whether for resale or for own use and consumption. As to those two sales, plaintiff claims they were made to purchasers for resale. In 17 instances, sales in the ordinary course of trade for resale, as well as for own use and consumption, were made at the highest price stated during the respective price list periods. The price was the same, whether for resale or for own use and consumption. The said 17 sales were stated to have been made to purchasers for their own use and consumption. The only support for the statement of affiant that the usual wholesale quantity prior to November 1, 1951, was five or more is found in the two sales made on October 6, 1949, and July 13, 1950.

This court, in various instances, has considered all sales in the ordinary course of trade in order to determine the usual wholesale quantity. In the case of *Larsen Importing Corp.* v. *United States*, 22 Cust. Ct. 465, Reap. Dec. 7709, affirmed in *Same* v. *Same*, 25 Cust. Ct. 366, Reap. Dec. 7855, all sales were considered, in spite of

the fact that there were five different designations of buyers and regardless of the quantity bought at varying discounts, the discounts depending on the quantity purchased. In *F. S. Whelan & Sons* v. *United States*, 39 C. C. P. A. (Customs) 168, C. A. D. 482, the merchandise involved was sold in the ordinary course of trade at three different price scales, each price being dependent upon the quantity purchased. Those who bought in carload lots obtained the lowest price. Those who bought in quantities of less than a carload, but more than 5,000 square feet, were charged a higher price. A still higher price was charged to all who bought in quantities of less than 5,000 square feet. The record disclosed that the number of sales to purchasers of less than 5,000-square-foot lots exceeded the sales made to other purchasers. It was claimed by the importer that the sales in less than carload lots were not the usual sales of the exporting company but were incidental sales in the ordinary course of business and were made largely as an accommodation to its customers. The court held that such sales were wholesale sales, made in the regular course of business. In deciding the case, the second division of this court cited *Jenkins* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093, and held that, in view of the fact that during a typical period the number of sales in less than carload quantities, under 5,000 square feet, far exceeded those in any other quantity bracket, that quantity represented the usual wholesale quantity. This decision was affirmed by the appellate court. Under the facts in the instant case, the above decision is applicable herein. Here, the three price lists do not show whether the quantities mentioned, viz, one to four balances, and five or more balances, in effect prior to November 1, 1951, and the price for one and two balances, or three or more thereafter, are for either wholesale or retail sales. It is merely evidence that the exporter's prices depended upon quantity bought, but he did not designate the respective prices as being either wholesale or retail on said lists. As above stated, the designations of the transactions in the affidavit as "wholesale" and "retail" are not borne out by the record. The definition of foreign value, here under consideration (section 402 (c), as amended, *supra*), does not provide that the wholesale price shall be the price to wholesalers, but the price in the usual wholesale quantities, and the usual wholesale quantity refers to a major portion of the sales. *G. W. Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T. D. 43237. Here, 2 sales, 9 months apart, relied on by the plaintiff, cannot have as much evidentiary value as the 17 sales which were made frequently over the period involved. If I consider the entire 61 sales, which, as above pointed out, included sales too remote to have evidentiary value, only 6 were in quantities

of 5 or more. It thus is apparent that the major portion of sales were in lots under five.

In contradiction of the allegation in exhibit 2 that of all sales made subsequent to November 1, 1951, those in quantities of three exceeded sales in any other quantity, I fail to find a single sale in the record subsequent to July 19, 1950, for home consumption. Therefore, there is no proof of foreign values differing from those found by the appraiser, where the date of exportation was subsequent to July 19, 1950. As to those cases, the presumptively correct appraised value is affirmed. On the record as presented, I find the usual wholesale quantity consists of one to four balances as to the merchandise exported prior to November 1, 1951, and of one or two balances as to exportations subsequent to that date, and that the *per se* values are those stated in the price lists for such quantities. Such values, in each case, equal the appraised unit values.

To these values, the appraiser added packing charges of 80 Swiss francs in all cases, except reappraisement 186965–A, in which case he added 50 Swiss francs. I find nothing in the record to overcome the presumption of correctness attaching to this finding.

There is also involved in the instant case an item of Swiss sales tax, which was not present in the earlier incorporated case. The evidence shows that this tax "was not included in the unit selling price but was charged extra. The said tax attached only when the balances were sold to unregistered dealers or to purchasers who bought for their own use and consumption." It is evident, therefore, that the involved balances were not freely offered for sale or sold for home consumption to all purchasers in the usual wholesale quantities and in the ordinary course of trade in Switzerland at a price which included the said sales tax. The official papers do not disclose that a Swiss sales tax was included in the *per se* unit claimed values, the *per se* duress entered value, or the *per se* unit appraised values. Nor does it appear that such tax was added. Therefore, no tax having been included or added to the *per se* unit prices, a decision on the question of whether the Swiss sales tax is or is not a dutiable item would not benefit the importer on the facts as to the claimed, duress entered, or appraised *per se* unit prices.

Reappraisement No. 187910–A involves special magnifiers, for use with these analytical balances, the date of exportation being June 30, 1949. As to that merchandise, no evidence was submitted. The presumptively correct appraised value, therefore, which is the same as the duress entered value, Swiss francs 15 each, plus 31.25 per centum, packed, stands uncontradicted.

I, therefore, find:

1. The merchandise in all but one of the reappraisement appeals here involved consists of analytical balances exported from Switzerland during the period between March 1949 and March 1952.

2. The principal market for the sale of such merchandise was Zurich, Switzerland.

3. Such balances were freely offered for sale in Switzerland for home consumption to all purchasers in the ordinary course of trade in quantities of one to four balances prior to November 1, 1951, and one and two balances thereafter at the *per se* unit prices stated in the price lists, dated September 1, 1948, May 7, 1949, and November 1, 1951, for the respective periods.

4. Such balances were freely offered for sale in Switzerland for home consumption to all purchasers in the ordinary course of trade in quantities of five or more balances prior to November 1, 1951, and three or more balances thereafter at the *per se* unit prices stated in the price lists, dated September 1, 1948, May 7, 1949, and November 1, 1951, for the respective periods.

5. Said merchandise was not freely offered for sale or sold for exportation to the United States.

6. A Swiss sales tax was not included in the *per se* unit entered or appraised values, nor do the *per se* unit prices in any of the price lists of record include any Swiss sales tax.

7. No similar balances were freely offered for sale or sold for home consumption in Switzerland or for exportation to the United States.

Therefore, I conclude as matters of law:

1. That foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended, *supra*, is the proper basis for appraisement of the analytical balances, there being no export value for such .or similar balances.

2. That the major portion of sales of such balances for home consumption in Switzerland during the period of exportation here involved was in quantities of one balance.

3. That the usual wholesale quantity in the ordinary course of trade for such analytical balances is one.

4. That the presumption of correctness attaching to the appraised value for the special magnifiers has not been overcome.

5. That the foreign values for both the analytical balances and the magnifiers are the appraised values in each case.

Judgment will be rendered accordingly.