(A. R. D. 68)

FISHER SCIENTIFIC COMPANY *v.* UNITED STATES

Entry No. 582, etc.

### First Division, Appellate Term

(Decided June 15, 1956)

*Jerome G. Clifford* (*Jerome G. Clifford* and *George W. Israel* of counsel) for the appellant.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This case is before us as a review of the decision in *Fisher Scientific Company* v. *United States*, 35 Cust. Ct. 383, Reap. Dec. 8469, wherein the trial judge sustained the appraised values of various models of precision analytical balances and special magnifiers for use with the analytical balances. The trial judge also affirmed the appraiser's action as it included packing charges and the Swiss sales tax within the appraised values of the merchandise.

Substantially the same merchandise from the same foreign exporter, as that involved herein, was the subject of *United States* v. *Fisher Scientific Company*, 40 C. C. P. A. (Customs) 164, C. A. D. 513, the record in which case was incorporated herein.

In this case, as in the incorporated one, foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended, is concededly the proper basis for valuation of the merchandise.

The opinion of the trial judge includes a very thorough and comprehensive review of the evidence offered in this case, as well as what was before the court in the incorporated case. To repeat such a detailed analysis would unduly lengthen this decision. Therefore,

we shall refer to only such parts of the combined records as are deemed necessary.

At this point, it is appropriate to review the incorporated case. There, the analytical balances and magnifiers therefor were exported from Switzerland between September 1948 and March 1949 by E. Mettler, the sole manufacturer and exclusive seller of such merchandise in the country of exportation. In an affidavit executed by the business director of the foreign manufacturing establishment (exhibit 1, suit 4740), it was established that, at the time of exportation of the merchandise there under consideration, and in the ordinary course of trade, the foreign manufacturer freely offered for sale, and sold:

* * * Analytical Balances and parts thereof without restriction as to quantity, use, resale, price, disposition, or any other restriction or limitation, to purchasers who buy for their own use or consumption and to purchasers who buy them for the purpose of resale. To any and all of these purchasers in Switzerland and to all purchasers these Analytical Balances were freely offered for sale and sold, as aforesaid, in quantities of one to four of one model or assorted models at the following prices:

Model 200 A 3, Swiss Francs 2,040.00, plus Swiss sales tax;
Model 200 A4N, Swiss Francs 2,140.00, plus Swiss sales tax;
Model 100 A5M, Swiss Francs 2,400.00, plus Swiss sales tax,

and in quantities of five or more of one or assorted models at the following prices:

\*       \*       \*       \*       \*       \*       \*

Parts of the subject Analytical Balances were and are freely offered for sale and sold to any and all purchasers as aforesaid, at the prices set forth in the above described invoices, the prices of each particular part being the same to all purchasers, whatever and regardless of the quantity purchased thereof. However, such parts are often given free of charge for the purpose of replacing broken parts.

Those who bought these Analytical Balances for their own consumption or use and not for resale purchased in quantities of one model to as many as ten of one or assorted models and those who purchased for the purpose of reselling them, bought in quantities of five upward of one model or assorted models. Of all the sales made in the ordinary course of trade in the principal markets of Switzerland, in quantities of five or more of one model or assorted models, to any and all purchasers, that is to say, to purchasers who bought for their own use or consumption, those who purchased them to resell and any other purchaser, by actual count the sales in quantities of five Analytical Balances exceeded and were more numerous than the sales thereof in any other quantity.

Defendant's (appellant's) evidence in the incorporated case consisted of a consular report (exhibit A, suit 4740), the pertinent portions of which are set out by the appellate court in its decision, C. A. D. 513, *supra*, as follows:

(c) Mettler has two home consumption prices, retail and wholesale, which do not vary with the status of the purchaser, such as wholesaler, retailer, or consumer.

(d) Prices vary with the quantity purchased. Any purchaser, whether wholesaler, retailer, or consumer, gets retail prices when ordering one to four balances, and wholesale prices when ordering five, ten, fifteen, or more balances. An exception has been made with Mettler's local agents or distributors who are

given the wholesale prices for orders placed by them for less than five balances at a time. At present there are no agents or distributors.

\* \* \* \* \* \* \*

2) Wholesale or retail prices do not vary in accordance with the quantities purchased or the status of the purchaser. To all purchasers in Switzerland who ordered up to four balances of any one model, or assorted, the regular retail prices applied. To those who ordered five or more balances, assorted if desired, a reduction or wholesale discount of 25 percent was allowed. \* \* \*

The appellate court's decision in the incorporated case turned on its finding of the usual wholesale quantity, within the meaning thereof under the statute, section 402 (c), as amended, *supra*. A list of sales, part of the consular report, hereinabove referred to, formed the basis for the court's finding of this element of foreign value. The court's analysis of the list of sales is set forth in the decision, C. A. D. 513, *supra*, as follows:

The list of transactions referred to sets out seven sales of 1 balance each under the heading "Retail Transactions." There are also six sales listed as "Wholesale Transactions." In the latter group, two of the sales are for 5 balances, one for 7, one for 2, and two for 1. According to the report, the last three sales were to E. Mettler's agent for the western part of Switzerland, who, because he purchased larger quantities in the course of time, was entitled to the wholesale price irrespective of the number ordered at any one time.

It seems clear to us that seven of these thirteen sales are *retail* transactions; they are so designated in the consular report relied on by appellant to support his contention. Further, it seems clear from the said report that the last-mentioned three "wholesale transactions" with the above-mentioned agent were *not* in the ordinary course of trade within the meaning of section 402 (c). For these reasons, there are only three wholesale sales listed in that report, two of 5 balances and one of 7, which may properly be considered as entering into a determination of the usual wholesale quantities. \* \* \* [Italics quoted.]

The evidence adduced by both parties in the incorporated case was summarized by the appellate court and its conclusion was expressed as follows:

Both the affidavit of Exhibit 1 and the report of Exhibit A clearly establish that in the ordinary course of trade there are, in the instant case, only two price categories, and that price varied only with the quantity purchased. *Any purchaser*, whether wholesaler, retailer or consumer, who bought in quantities of 1 to 4 paid according to the higher price schedule; but *any purchaser* who bought 5 or more balances paid according to the second price schedule, at a wholesale discount of approximately 25 %. We have been unable to find any prior decision by this court which involved such a price arrangement.

The purpose of determining the *usual* wholesale quantities under section 402 is to ascertain the proper valuation of the imported merchandise. Foreign value is not the price to wholesalers, but the price in the usual wholesale quantities. The law is not concerned with the persons who buy, but the manner in which they buy. *United States* v. *Richard & Co.*, 15 C. C. P. A. (Customs) 143, T. D. 42216. It is obvious that in this case such valuation would be the same if 5, or 7, or 10, or 20 balances were to be regarded as the usual wholesale quantity. In our opinion, there is here *only one wholesale quantity*, in the ordinary course of trade, namely, *5 or more* balances. We think it necessarily follows, in view of the foregoing,

that in this case the usual wholesale quantity within the meaning of section 402 (c) is *5 or more* balances. [Italics quoted.]

The effect of the appellate court's conclusion, as expressed in the foregoing quotation, was to sustain the importer's contention and hold its claimed values to be the foreign values of the merchandise.

In the case now before us, the analytical balances and magnifiers in question were exported from Switzerland between April 1949 and March 1952. Here, as in the incorporated case, all of the evidence is documentary. The importer (appellant) introduced two affidavits (plaintiff's exhibits 1 and 2) that were executed by the same individual whose affidavits were received in the incorporated case. These affidavits "reaffirm and confirm each and every statement and everything contained" in the affidavits embodied in the incorporated case. Attached to one of the affidavits herein (plaintiff's exhibit 1) is a list of 61 sales, extending over the period from August 1948 to July 1950. The trial court's analysis thereof appears in its decision, Reap. Dec. 8469, *supra*, as follows:

In the instant case, the period of exportation was from April 1949 through March 1952. The evidence now before us consists of 61 sales made from August 10, 1948, to July 19, 1950. This list of 61 sales includes the 13 sales covered by suit 4740 [the incorporated case], with the exception of the sales listed for April 14, 1948, May 3, 1948, and July 30, 1948. The other 10 sales in suit 4740 [the incorporated case], although identifiable in this list of 61, can have no application herein, inasmuch as they were not made within the period involved in the instant appeals. No sales are listed from July 19, 1950, to March 15, 1952, which is a portion of the period of exportation here involved. It is, therefore, apparent that the 13 sales thus included are too remote to be considered in arriving at the statutory value of the instant merchandise, which involves the ordinary course of trade and the usual wholesale quantity. In view of this discrepancy, we must disregard any statements as to these 13 sales found in exhibit A, suit 4740 [the incorporated case], or in exhibits 1 and 2 in the instant case. Therefore, the classifications of "Retail Transactions" or "Wholesale Transactions" are of little or no evidentiary value in the instant case and cannot aid us in a determination of usual wholesale quantity, the ordinary course of trade, or the dutiable value of the involved merchandise.

The evaluation of the importer's list of sales, as stated in the foregoing quotation, is not consistent with the appellate court's decision in the incorporated case, and, therefore, it is not acceptable. First of all, the 13 sales that were the primary consideration by the appellate court in resolving the question of the usual wholesale quantity, in the incorporated case, are not, under all of the circumstances involved herein, "too remote to be considered in arriving at the statutory value of the instant merchandise, which involves the ordinary course of trade and the usual wholesale quantity," as stated by the trial judge. Those earlier sales, coupled with the transactions made within the period covered by the importations involved herein, reflect a market, wherein prices, as well as the usual wholesale quantities, remained constant under the established course of trade over the period. Under

such conditions, sales made on dates that may be months removed from the actual date of exportation might properly reflect the price at the time of exportation of imported merchandise. The rule was expressed in *United States* v. *New York Merchandise Co., Inc.*, 31 C. C. P. A. (Customs) 213, C. A. D. 274, as follows:

* * * It is obvious that no definite period prior or subsequent to the exportation can be fixed as a standard for all cases. A fluctuating market, which might be brought about by many reasons, might make a date of sale or offer in this country prior or subsequent to the date of exportation an improper one to accept in determining the question here involved. On the other hand, the proof might show a steady, unvarying market or other conditions which would make a date months removed from the date of exportation a proper one to reflect what the price was on the date of exportation.

Although the court in the *New York Merchandise Co., Inc.*, case, *supra*, was considering United States value, as defined in section 402 (e) of the Tariff Act of 1930, the principle enunciated therein, as stated in the above quotation, is also applicable herein, where foreign value, section 402 (c), as modified, *supra*, is concededly the proper basis for appraisement of the merchandise under consideration. Furthermore, the principle invoked in the cited case has application in determining any of the elements (in this case, we are concerned primarily with "usual wholesale quantities") embodied in the statutory definition of foreign value. Accordingly, we hold the list of 61 sales, part of plaintiff's (appellant's) affidavit (exhibit 1, *supra*), including, as it does, the 13 sales embodied in the incorporated record, to be pertinent to the issues now before us. Accepting, as we do, the list of 13 sales from the incorporated record, carries equal consideration of the classifications "Retail Transactions" and "Wholesale Transactions," with the same weight attached thereto as the appellate court applied in the incorporated case, as hereinabove set forth in our detailed review thereof.

Analysis of the 61 sales enumerated in the list supplied with the affidavit (exhibit 1, *supra*) shows that affiant divides the sales into 7 categories. Twenty-five of the sales were "not in the ordinary course of trade" and, therefore, are not material in determining statutory foreign value. Thirty-one of the sales were for one balance each, which, in the light of the decision of the appellate court in the *Fisher Scientific Company* case, *supra*, incorporated herein, are retail transactions, and are not to be considered in finding the "usual wholesale quantities" under the statute, section 402 (c), as modified, *supra*. The remaining five sales were in quantities of five or more balances, which, under the *Fisher Scientific Company* case, *supra*, are "wholesale transactions" that "may properly be considered as entering into a determination of the usual wholesale quantities." Following the reasoning employed in the *Fisher Scientific Company* case, we find in this case, as the appellate court did in the incorporated case, that

"there is here *only one wholesale quantity* in the ordinary course of trade, namely, *5 or more* balances," and that "in this case the usual wholesale quantity within the meaning of section 402 (c) is *5 or more* balances." [Italics quoted.]

While that conclusion supports values claimed by appellant, it applies only to the merchandise exported between the period from April 1949 to October 31, 1951. Subsequent thereto, a course of trade was adopted, different from that previously followed. Appellant contends that, beginning November 1, 1951, and up to the present date, the "usual wholesale quantities," within the meaning of that phrase in paragraph 402 (c), as modified, *supra*, for analytical balances, such as those involved herein, was in quantities of three or more of one or assorted models. To support the contention, we have only the bare statement of affiant that "sales in quantities of three (3) numerically exceeded and were more numerous than sales thereof in any other quantity" (plaintiff's exhibit 2). The statement is not supported by any records of sales. A price list, attached to the affidavit (plaintiff's exhibit 2), is in a foreign language and has no probative value herein. The situation thus presented is substantially the same as that which was before the court in *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495. In that case, appellant's affidavit included a statement that "the great majority of sales of matrix board to purchasers other than consumers were in quantities of 15,000 square meters or more." The appellate court held that the statement could not be regarded as substantial evidence on the question of usual wholesale quantities. The court reasoned as follows:

* * * it is our opinion that affiant's statement, above referred to, that "the great majority of sales * * * were in quantities of 15,000 square meters or more" must be held to be nothing more than affiant's own conclusion of an *ultimate fact* which is an essential element of his case, namely, the usual wholesale quantities; this conclusion is unsupported by any *evidentiary facts* whatsoever. The fact that affiant did not use the statutory language but used the judicial equivalent thereof must be regarded as an immaterial matter of form rather than substance. It is because we consider this statement by affiant a mere conclusion of an ultimate issuable fact that we think it cannot be regarded as substantial evidence which will support the holding of the trial judge.

\*      \*      \*      \*      \*      \*      \*

The Supreme Court has defined "substantial evidence" as evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Substantial evidence, said the Court further, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.*, 306 U. S. 292.

\*      \*      \*      \*      \*      \*      \*

In view of the foregoing discussion, it seems to us an inescapable conclusion that affiant's statements pertaining to the question of usual wholesale quantities

are merely statements of a vital issuable fact and hence only a declaration of an essential ultimate fact. Being such, we think that under the test laid down by the Supreme Court in the *Columbian Company* case, *supra*, such statements cannot properly be regarded as substantial evidence. It is within the jurisdiction of this court to so hold, for, although the weight to be attached to proper evidence is the function of the trial and review courts below, whether or not there is substantial evidence to support a finding of fact by these tribunals is a question of law which may be determined by this court. * * *

In the *Fisher Scientific Company* case, *supra*, the appellate court emphasized the importance of sales records to support a statement directed toward proving "usual wholesale quantities" and stated:

* * * where the exporter of the imported merchandise is the sole producer of such merchandise in the country from which exported, as in this case, we think the party challenging the appraised value in the first instance would be wise to at least present a *summary* of the relevant sales for the pertinent time period, so that the customs courts may be able to decide all relevant questions of law and fact in order to determine what is the *usual wholesale* quantity. * * *

Appellant's twofold burden of proof is set out in the statute (28 U. S. C. § 2633), which provides that:

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

Under the *Brooks Paper Company* case, *supra*, appellant's proof, as it relates to the analytical balances exported subsequent to October 31, 1951, is not sufficient to overcome the presumption of correctness attached to the values found by the appraiser, as held by the trial judge.

One of the consolidated cases, i. e., reappraisement 187910–A, involves merchandise described on the invoice as "Special Magnifiers for use with METTLER Analytical Balances," which appellant contends should be appraised on the basis of the invoice value. To support such claim, counsel for the appellant in his brief, points to the following statement included in the affidavit (exhibit 1, suit 4740, *supra*):

Parts of the subject Analytical Balances were and are freely offered for sale and sold to any and all purchasers, as aforesaid, at the prices set forth in the above described invoices, the prices of each particular part being the same to all purchasers, whatever and regardless of the quantity purchased thereof. However, such parts are often given free of charge for the purpose of replacing broken parts.

In the light of the combined records herein, showing the foreign manufacturer as the exclusive seller of the merchandise under consideration to various classes of purchasers and at different prices, the foregoing statement appears before us as a conclusion embodying ultimate facts, without support therefor from evidentiary facts that are essential to prove statutory foreign value. We, therefore, hold, as did the trial judge, that "The presumptively correct appraised value, * * * which is the same as the duress entered value, Swiss francs 15 each, plus 31.25

per centum, packed," is the statutory foreign value of the special magnifiers in question.

Appellant also contends that the Swiss sales tax forms no part of foreign value, as defined in section 402 (c), as modified, *supra*. The trial judge disposed of the question very clearly and succinctly. Adopting his disposition of the matter as our own, we quote from the opinion of the trial judge, stating as follows:

There is also involved in the instant case an item of Swiss sales tax, which was not present in the earlier incorporated case. The evidence shows that this tax "was not included in the unit selling price but was charged extra. The said tax attached only when the balances were sold to unregistered dealers or to purchasers who bought for their own use and consumption." It is evident, therefore, that the involved balances were not freely offered for sale or sold for home consumption to all purchasers in the usual wholesale quantities and in the ordinary course of trade in Switzerland at a price which included the said sales tax. The official papers do not disclose that a Swiss sales tax was included in the *per se* unit claimed values, the *per se* duress entered value, or the *per se* unit appraised values. Nor does it appear that such tax was added. Therefore, no tax having been included or added to the *per se* unit prices, a decision on the question of whether the Swiss sales tax is or is not a dutiable item would not benefit the importer on the facts as to the claimed, duress entered, or appraised *per se* unit prices.

Among appellant's assignment of errors is the allegation that the trial court erred "In finding and holding that there is nothing in the record to overcome the presumption of correctness of the appraiser's action in adding packing charges of 80 Swiss francs in all cases except reappraisement 186965–A in which the appraiser added 50 francs, and in not finding and holding to the contrary." (Appellant's assignment of error No. 24.) The combined records contain nothing to warrant any change in the trial court's conclusion concerning packing charges. All of the invoices show, separately, the item of packing charges, and, in each of these cases, appraisement was made at unit prices, plus the packing charges. Since there is nothing to disturb that action of the appraiser, which is presumptively correct, the amount of packing charges, as invoiced, is a proper addition to the *per se* values of the merchandise, in determining the statutory foreign value thereof.

For all of the reasons hereinabove set forth, we find as matter of fact:

1. The merchandise involved in all of the consolidated cases, except reappraisement 187910–A, consists of analytical balances, exported from Switzerland during the period between April 1949 and March 1952.

2. The merchandise covered by reappraisement 187910–A consists of special magnifiers for use with analytical balances, exported from Switzerland in June 1949.

3. Analytical balances, such as those involved herein, were freely

offered for sale to all purchasers in the principal market of Zurich, Switzerland, for home consumption, in the usual wholesale quantities of five or more balances, in the ordinary course of trade, between the period from April 1949 through October 1951.

4. Analytical balances, such as those involved herein, were freely offered for sale to all purchasers in the principal market of Zurich, Switzerland, for home consumption, in wholesale quantities, in the ordinary course of trade, beginning November 1, 1951, and extending throughout the period subsequent thereto and pertinent herein.

5. Special magnifiers for use with analytical balances were, at the time of exportation of the merchandise covered by reappraisement 187910-A, freely offered for sale to all purchasers in the principal market of Zurich, Switzerland, for home consumption, in the ordinary course of trade.

6. Merchandise, such as that covered by these appeals for reappraisement, was not freely offered for sale or sold for exportation to the United States.

7. A Swiss sales tax was not included in the *per se* unit entered or appraised values.

Accordingly, we conclude as matter of law:

1. That foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended, *supra*, is the proper basis for appraisement of the merchandise covered by these appeals for reappraisement.

2. That the usual wholesale quantity in the ordinary course of trade for the analytical balances exported between the period from April 1949 through October 1951 is five or more balances.

3. That the statutory presumption of correctness attached to the values found by the appraiser has not been overcome as to the analytical balances covered by the shipments under consideration, wherein such merchandise was exported as of November 1, 1951, and subsequent thereto.

4. That the foreign values, within the definition of foreign value, as set forth in section 402 (c), as modified, *supra*, of the analytical balances exported from Switzerland from April 1949 through October 1951, are the values set forth in schedule "A," attached hereto and made a part hereof.

5. That the statutory foreign value for the analytical balances, exported as of November 1, 1951, and subsequent thereto—being the merchandise covered by reappraisements 218533-A, 220779-A, 220923-A, 221538-A, 239125-A, and 239126-A—is in each instance the appraised value.

6. That the presumption of correctness attached to the value found by the appraiser for the special magnifiers covered by reappraisement 187910-A has not been overcome; hence, the foreign value therefor is the appraised value.

The judgment of the trial court is modified accordingly.

SCHEDULE "A"

STATUTORY FOREIGN VALUES OF ANALYTICAL BALANCES EXPORTED FROM SWITZERLAND BETWEEN THE PERIOD FROM APRIL 1949 THROUGH OCTOBER 1951

| Reappraisement No. | Entry No. | Model | Foreign value |
|---|---|---|---|
| 186965–A | 582 | 100A5M | 1,775 Swiss francs |
| 186966–A | 665 | 200A4N | 1,248 " |
| 186967–A | 672 | 100A5M | 1,404 " |
| 187908–A | 178 | 200A4N | 1,248 " |
| 187909–A | 350 | 200A4N | 1,248 " |
| 189129–A | 324 | 200A4N | 1,248 " |
| " | " | 100A5M | 1,404 " |
| 190122–A | 361 | B–5 | 1,248 " |
| 190852–A | 547 | 100A5M | 1,404 " |
| 192349–A | 648 | B–5 | 1,248 " |
| 192350–A | 573 | B–5 | 1,248 " |
| 192828–A | 731 | B–5 | 1,248 " |
| " | " | 100A5M | 1,404 " |
| 196277–A | 758 | B–5 | 1,248 " |
| 196278–A | 801 | B–5 | 1,248 " |
| 196814–A | 35 | B–5 | 1,248 " |
| " | " | B–6 | 1,404 " |
| 197416–A | 129 | B–5 | 1,248 " |
| 198860–A | 244 | B–5 | 1,248 " |
| 198994–A | 285 | B–5 | 1,248 " |
| 202376–A | 565 | B–5 | 1,248 " |
| 202377–A | 418 | B–5 | 1,248 " |
| 202959–A | 429 | M–5 | 1,573 " |
| 202960–A | 715 | B–5 | 1,248 " |
| " | " | B–6 | 1,404 " |
| 203986–A | 851 | B–5 | 1,248 " |
| 207307–A | 942 | B–5 | 1,248 " |
| " | " | B–6 | 1,404 " |
| 207308–A | 1046 | B–5 | 1,248 " |
| " | " | B–6 | 1,404 " |
| 207309–A | 1131 | B–5 | 1,248 " |
| 209175–A | 1213 | B–5 | 1,248 " |
| 215450–A | 1239 | M–5 | 1,573 " |
| 215451–A | 1284 | B–5 | 1,248 " |
| 215452–A | 1324 | M–5 | 1,573 " |
| 215453–A | 25 | B–5 | 1,248 " |
| " | " | B–6 | 1,404 " |
| 215454–A | 70 | B–5 | 1,248 " |
| " | " | B–6 | 1,404 " |
| 215455–A | 121 | B–5 | 1,248 " |
| " | " | B–6 | 1,404 " |
| 215456–A | 259 | B–5 | 1,248 " |
| 215457–A | 414 | B–5 | 1,248 " |
| " | " | B–6 | 1,404 " |

Packing charges, as invoiced, to be added