THE INTERNATIONAL NICKEL COMPANY *v.* UNITED STATES

No. 8034.—Entered at Pittsburgh, Pa.
Entry No. 408, etc.

(Decided August 9, 1951)

*Sullivan & Cromwell* (*Robert MacCrate* and *Marvin S. Sloman* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*John J. Antus* and *Daniel I. Auster,* special attorneys), for the defendant.

COLE, Judge: Plaintiff, engaged in the production of nickel alloys, purchased 1,005 pounds of sintered titanium metal from Dominion Magnesium, Limited, the manufacturer and seller of the merchandise, with office at Toronto, and factory at Haley, Ontario, Canada.

This case concerns five entries listed in schedule "A," hereto attached and made a part hereof, made at Pittsburgh, Pa., comprising the following shipments:

| Reap. No. | Date of exportation | Quantity | | Date of entry |
|---|---|---|---|---|
| 192875–A | Dec. 22, 1949 | 200 | lbs. | Jan. 9, 1950 |
| 192876–A | Jan. 13, 1950 | 200 | lbs. | Jan. 20, 1950 |
| 192877–A | Jan. 8, 1950 | 200 | lbs. | Jan. 20, 1950 |
| 192878–A | Dec. 27, 1949 | 204½ | lbs. | Jan. 18, 1950 |
| 192879–A | Jan. 3, 1950 | 200½ | lbs. | Jan. 18, 1950 |

Entry in each instance was made at the invoice value of $4 per pound, Canadian currency, plus $10 Canadian currency as the value of steel drums, the usual containers. Appraisement was made at $6.75 per pound, Canadian currency, net, packed, cost of steel drums at $2.50 Canadian currency, each, included.

Plaintiff claims that there is no foreign value, section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)); that export value, section 402

(d) of the Tariff Act of 1930 (19 U., S. C. § 1402 (d)), is the proper basis for appraisement; and that such statutory value is the entered value.

To support its contention, plaintiff introduced testimony of two witnesses and an affidavit, exhibit 1. A customs agent's report, exhibit 2, disclosing nothing more than what plaintiff has shown, is the only evidence offered by defendant. Further reference thereto is unnecessary.

Neville S. Spence, the foreign exporter's director of technical service and development, in his affidavit, exhibit 1, *supra*, described the manufacture of the imported product in substantially the following manner:

Titanium, a light, strong, corrosion-resistant metal, with high strength-to-weight ratio, is a commercial product of recent development. Production, on an experimental pilot plant basis, began in June 1948 through a so-called "oxide" process (not publicly disclosed) by which the metallic element is reduced to a coarse titanium metal powder. Vacuum-sintered titanium, the merchandise in question, was developed during the following year. This form of titanium results from manipulation of the powdered substance, compressing it into either circular slugs (pellets) or rectangular slabs (compacts), and then vacuum sintering or heating under a temperature of 1,000° C., that binds the particles together by atomic diffusion. After cooling in vacuum to room temperature, the titanium pellets or compacts are ready for shipment. The present merchandise, in the form of pellets and compacts, was shipped in steel drums, each containing approximately 100 pounds.

Plaintiff's production manager, a metallurgist and chemical engineer, testified that the vacuum-sintered titanium in question was used by his company as a constituent in nickel chrome alloys, which are susceptible of resistance to high temperature and ultimately employed in the production of engines for military aircraft. Indicative of the large quantity of the imported product used by plaintiff, the witness testified that the smallest commercial quantity of plaintiff's finished product (titanium-bearing alloy) would have a titanium content "in the neighborhood of 120 to 150 pounds."

There is no dispute that Dominion Magnesium, Limited, the Canadian exporter, is the sole producer of vacuum-sintered titanium; that Toronto is the principal market therefor; that at the time of exportation of the shipment under consideration such merchandise was freely offered for sale and sold to all purchasers for home consumption in Canada and for exportation to the United States; and that all sales of the merchandise were made to consumers.

The sole question before me, therefore, is the matter of wholesale quantities with ultimate determination of the statutory element,

"usual wholesale quantities," in the definition of export value, section 402 (d), *supra*, the basis of appraisement claimed by plaintiff. It is a well-established principle that the usual wholesale quantity, for appraisement purposes, is the wholesale quantity in which the major portion, or greatest number, of sales or offers for sale is made. *Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T. D. 43237; *United States* v. *Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912.

As the proposition is presented here, plaintiff relies very heavily on the price schedule of the Canadian exporter, set forth in the affidavit, exhibit 1, *supra*, as follows:

The price schedule in effect from July 1, 1949, to December 31, 1950 was as follows, all prices, f. o. b. Haley, Ontario:

*Wholesale*

| 100 lbs. to 499 lbs. | 500 lbs. to 999 lbs. | 1,000 lbs. or over |
| --- | --- | --- |
| $4.75 (Canadian Funds) per pound | $4.25 (Canadian Funds) per pound | $4.00 (Canadian Funds) per pound |

*Less Than Wholesale*

| 25 lbs. or less | 26 lbs. to 99 lbs. |
| --- | --- |
| $6.75 (Canadian Funds) per pound | $5.75 (Canadian Funds) per pound |

The foregoing price schedule was not published, but rather inquiries were invited through the medium of publicity hand-outs or circulars advertising the valuable properties of the merchandise. The witness makes the following explanation concerning preparation of the price schedule:

The schedule was established with due regard to encouragement of the purchase of the metal in commercial lots. It provided for a variation in price of $4 to $4.75 per pound on wholesale quantities; while for sales in smaller quantities not usual in the course of our metals trade and generally of an accommodation character, the price was set at $5.75 or $6.75 per pound.

Fair analysis of this statement is to say that the foreign manufacturer, to increase the sale and distribution of vacuum-sintered titanium, which was still in a promotional stage, set up an arrangement of prices based upon quantities purchased. All sales were made to the same class of purchasers, i. e., consumers, but the price was dependent upon the amount bought.

The witness' statement that "sample quantities of up to 100 pounds" were given by the foreign manufacturer to prospective industrial users could not have been a consistent practice because among the lists of sales are two, showing prices paid in accordance with the price schedule. In one of those sales, the Westinghouse Electric Corp. of Pitts-

burgh, Pa., bought 15 pounds at $6.75 (Canadian currency) per pound, and in the other, Dow Chemical of Midland, Mich., bought 1 pound at the same price. That all sales, except those to plaintiff, were to purchasers who bought for experimental and research purposes, is immaterial to the present issue.

An important fact, stipulated between the parties, is that vacuum-sintered titanium was freely offered by the Canadian manufacturer to all purchasers for home consumption and for exportation to the United States, during the period under discussion, in the same quantities and at the same prices as set forth in the price schedule, *supra*.

Division of the price classifications into two categories—"Wholesale" and "Less Than Wholesale"—which are admittedly the witness' personal designations, is not accepted as a positive fact. On the contrary, the designations are considered mere conclusions by the witness in the light of the present record, and contribute little in the determination of a usual wholesale quantity. *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093, and *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466 (re-affirmed in 28 C. C. P. A. (Customs) 166, C. A. D. 140), supply abundant authority for the limitation placed on plaintiff's testimony.

The mere use of the word "wholesale" as a caption to a class of sales, such as plaintiff saw fit to apply, cannot be accepted as a final characterization of transactions, and thus become determinative in a judicial interpretation of the phrase, "usual wholesale quantities." Such use as plaintiff has made herein has been considered, as it should, as an element making up the ultimate finding from all of the evidence, but it cannot be taken as conclusive. To sustain plaintiff's theory on the matter of usual wholesale quantities, would be tantamount to laying down a legal yardstick in that field too easily controlled in its application by self-constructed catalogs or other similar publications. Despite the complete absence of any dishonest or sinister purpose, as is the case here, such a finding cannot be made.

The burden on plaintiff was to establish every element entering into statutory export value, section 402 (d), *supra*, and in failing to show the usual wholesale quantity in which the merchandise was sold or offered for sale, such burden has not been met. *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276; *United States* v. *T. D. Downing Co.*, 20 C .C. P. A. (Customs) 251, T. D. 46057; *United States* v. *Gane and Ingram, Inc.*, 24 C. C. P. A. (Customs) 1, T. D. 48264.

Plaintiff's proof being insufficient to overcome the statutory presumption of correctness (28 U. S. C., 1946 ed., Supp. III, § 2633) attaching to the value found by the appraiser, that value must be and hereby is affirmed.

For reasons hereinabove set forth, I find as matter of fact:

(1) That the merchandise in question consists of vacuum-sintered titanium in the form of pellets and compacts.

(2) That Dominion Magnesium, Limited, the foreign exporter of the present merchandise, with office at Toronto and manufacturing plant at Haley, Ontario, Canada, is the sole Canadian producer thereof.

(3) That the principal market in the country of exportation is Toronto.

(4) That all sales of the merchandise have been to consumers.

(5) That this merchandise, at the time of exportation thereof, was freely offered for sale and sold to all purchasers in the principal market of Canada for home consumption and for exportation to the United States, at various prices, depending on the quantity purchased.

I hold as matter of law:

(1) That plaintiff's proof is insufficient to establish the usual wholesale quantity in which the vacuum-sintered titanium was freely offered for sale or sold, at the time of exportation of the present merchandise, in the principal market of Canada either for home consumption or for exportation to the United States.

(2) That plaintiff has failed to overcome the statutory presumption of correctness attached to the value found by the appraiser, which value is therefore affirmed.

Judgment will be rendered accordingly.