(Reap. Dec. 9149)

JOHN M. HAFFERT v. UNITED STATES

Entry No. 883843, etc.

(Decided May 14, 1958)

James G. McGoldrick for the plaintiff.

George Cochran Doub, Assistant Attorney General (Samuel D. Spector, trial attorney), for the defendant.

JOHNSON, Judge: These appeals for reappraisement, consolidated at the trial, involve religious statuary and miniature silver crowns, exported from Portugal between July 4, 1952, and February 6, 1955. The statues vary in size, composition, and price. They were entered in United States dollars at the invoice prices and were appraised at the invoice unit prices, plus 25 per centum, plus packing.

Plaintiff claims that no export value exists for this merchandise; that the proper basis of valuation is foreign value; and that such value is the price to all purchasers for resale for home consumption.

At the trial, plaintiff offered in evidence an affidavit of Albano da Silva França, a partner of the firm of José da Silva França & Filhos, Lda., the supplier of the merchandise. According to the affidavit, França & Filhos is in the business of manufacturing, producing, and

selling religious statues and other articles; it is primarily engaged in selling its products to resellers, but, on the same premises and close to its workshops, the firm has an establishment for the public sale of its manufactures at Oporto and has no interest in selling them to resellers in that city. It is further stated that, in 1952, França & Filhos and J. M. Haffert, the importer herein, made a contract whereby Haffert agreed to buy his requirements exclusively from França & Filhos, and it agreed to sell only to him in the United States. After July 10, 1952, França & Filhos sold to Haffert at net prices only, but, prior thereto, it had sold at an arbitrary price, less a small discount, which was a price made only for sales to the United States.

Attached to the affidavit is a pricelist giving three prices for each article, in columns headed:

| (Wholesale) Invoice Price To Haffert US Dollars | Wholesale Price in Portugal | Retail Price at Studio Shop |
|---|---|---|
| | | ESCUDOS |

Plaintiff also offered in evidence a photostatic copy of a questionnaire by the office of the appraiser of merchandise to the supplier, dated August 28, 1956 (plaintiff's exhibit 2). It is stated therein that the prices in the home market are not affected by any quantity purchased. Attached is a resale pricelist for certain images for the "U. S. A." and for "Portugal."

John M. Haffert testified at the trial that, although he was nominally the importer of the merchandise, the real importer was the Ave Maria Institute, of which he was a director. He said that his first contact with the supplier occurred in 1946, when he went into its store in Oporto, Portugal, and personally bought a rather large quantity of merchandise for himself. Subsequently, about 1950, when the institute needed a statue, called the "Home Pilgrim Virgin," he recommended the statue which he had bought in that store. A small quantity was ordered in the beginning and then the institute entered into a written contract with the seller, whereby the former, through Haffert, was made the exclusive representative of the seller in the United States, because the statue had become identified with the work of the institute.

Subsequent to the trial, the submission of the appeals was set aside and the case reopened for the purpose of receiving into evidence a letter from José da Silva França & Fº Ltda. to John M. Haffert, Ave Maria Institute, dated April 20, 1950 (plaintiff's exhibit 3). Said letter states in part:

CUSTOMARY CLIENTS—We are near of concluding the orders we have in hands but in the future we will not satisfy further ones; we are writing to all of our ancient clients on your Country advising that as from this date they must con· tact with you in order to get wanted statues;

Many thanks for your resolution of keeping without increase the prices of statues with destination to our usual Clients; naturaly [*sic*] you will reserve to you the respective commissions as we did not allow any discount to them on all our past business.

According to the witness Haffert, the invoice prices are the amount actually paid by the Institute for the imported articles. He said that he had made purchases personally in Portugal in the summer of 1956 and that the price was less than the price paid for imported merchandise. He distinguished no difference between the articles he purchased at retail and those which he imported. He brought to the trial two statues purchased in the store which, in his opinion, were superior to the average statue imported. He said they were sold in the store at a lower retail price than he paid wholesale in the United States. He also stated that the prices of these statues had not changed from the time he first imported them and that the value of the dollar has not changed with relation to that of the escudo.

Defendant offered in evidence a report from the American vice consul at Oporto, Portugal, dated April 9, 1953, containing information obtained from Alberto da Silva França and the books of the supplier. It is stated therein:

Mr. França stated that Mr. Haffert has no exclusive selling rights for the whole or any section of the United States; that his firm has sold and is prepared to sell to others; that sales to others have been in the form of small parcel post shipments which did not require consular invoices.

Verification: Mr. França stated that many of the people who formerly purchased direct from his firm in small quantities now purchase from Haffert. An examination of Mr. França's records appeared to bear out this statement, since few if any shipments have been made to individual purchasers in the United States after 1950.

The report states further that when Mr. França was first interviewed he said that the prices to Haffert were from 20–25 per centum lower than to other purchasers, but he said subsequently that the discount to Haffert was 15 per centum on images manufactured of terra cotta and 10 per centum on plaster-of-paris articles. He also said that when an order was received from Haffert, he produced more than the amount required and selected the best for shipment to Haffert, since other purchasers were not as exacting as Haffert as to the perfection of the finished product. According to the report, Mr. França said his firm did not issue pricelists and that the prices in its retail outlet were about 20 per centum higher than those charged to Mr. Haffert.

The burden of proof in reappraisement cases rests upon the plaintiff who is required to prove the action of the appraiser erroneous and to establish some other dutiable value as the proper one. *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593; *United States* v. *Fisher Scientific Co.*, 44 C. C. P. A. (Customs) 122,

C. A. D. 648. In the instant case, plaintiff claims that there was no export value for this merchandise, that there was a foreign value, and that it is represented by the prices listed under the column "Wholesale Price in Portugal," as set forth in the schedules attached to plaintiff's exhibit 1.

The evidence as to whether or not the plaintiff was the exclusive distributor of the seller's articles in the United States is conflicting, but, in view of plaintiff's exhibit 3, I find that the weight of the evidence supports plaintiff's contention that there was no export value for this merchandise.

To sustain the second part of his burden of proof, plaintiff relies upon the affidavit of Albano da Silva França and the pricelists attached thereto (plaintiff's exhibit 1). According to this evidence, sales were made to resellers in the home market at the "Wholesale Price in Portugal," and sales were made at the seller's shop in Oporto at the "Retail Price at Studio Shop."

Under section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, the foreign value is the price at which such or similar merchandise is freely offered for sale to all purchasers for home consumption in the usual wholesale quantities and in the ordinary course of trade. It has long been held that this does not mean the price to wholesalers, but the price to all persons who buy in the usual wholesale quantities. *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216; *United States* v. *G. Gennert, Inc.*, 22 C. C. P. A. (Customs) 374, T. D. 47388. Sales to consumers, if made in wholesale quantities, may be considered in determining foreign value. *American Shipping Co.* v. *United States*, 29 C. C. P. A. (Customs) 250, C. A. D. 198.

There is nothing in the instant case to establish the quantities at which this merchandise was sold to resellers or the quantities in which it was sold in the studio shop. Designation of these sales as "wholesale" and "retail" is a conclusion of the witness and cannot be accepted as a positive fact. *The International Nickel Company* v. *United States*, 27 Cust. Ct. 415, Reap. Dec. 8034.

The only evidentiary facts in the record are inconclusive. The witness Haffert testified that the first time he visited the shop he purchased a rather large quantity for himself. He did not state what the quantity was or the price paid at that time, although he said several times that the prices at the studio shops were less than the export prices.

The pricelist attached to plaintiff's exhibit 2, which is called a "Resale price-list," and the pricelist attached to plaintiff's exhibit 1 refer to some of the same items. However, the prices in the former more nearly correspond to the "retail" prices in the latter than to the "wholesale" prices.

It is, therefore, impossible to determine which set of prices, if either, was the set at which the merchandise was freely offered to all purchasers for home consumption in the usual wholesale quantities and in the ordinary course of trade.

Since the plaintiff has failed to sustain his burden of establishing as correct any values other than the appraised values, the appraised values must be affirmed.

Accordingly, I find as facts:

1. That the merchandise involved in this case consists of religious statuary and miniature silver crowns, exported from Portugal between July 4, 1952, and February 6, 1955.

2. That said merchandise was entered in United States dollars at the invoice prices and was appraised at the invoice unit prices, plus 25 per centum, plus packing.

3. That there was an agreement between the manufacturer or supplier and the Ave Maria Institute, whereby the latter, through the importer, was made the exclusive representative of the former in the United States.

4. That the record does not establish the price at which such or similar merchandise was freely offered for sale to all purchasers for home consumption in the usual wholesale quantities and in the ordinary course of trade.

I conclude as a matter of law that there was no export value for this merchandise, but that the plaintiff has failed to overcome the presumption of correctness attaching to the appraised values, which values are, therefore, affirmed.

Judgment will be rendered accordingly.