(Reap. Dec. 9360)

JOHN M. HAFFERT v. UNITED STATES

Entry No. 883843, etc.

(Decided on rehearing [Reap. Dec. 9149] March 23, 1959)

*James G. McGoldrick* for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

JOHNSON, Judge: This case was originally tried on December 4, 1957, and a decision was rendered thereafter, affirming the appraised values on the ground that plaintiff had not met his burden of establishing as correct any other values. *John M. Haffert* v. *United States,* 40 Cust. Ct. 821, Reap. Dec. 9149. Subsequently, an application for a rehearing was made and granted. *John M. Haffert* v. *United States,* 41 Cust. Ct. 475, Reap. Dec. 9179.

At the original hearing, 9 appeals for reappraisement were consolidated and at the second rehearing, on December 3, 1958, reappraisement No. 289512–A was also consolidated with the other cases.

The merchandise involved in these cases consists of religious statuary and miniature silver crowns, exported from Portugal between July 4, 1952, and March 18, 1957. The articles vary in size, composition, and price. They were entered in United States dollars at the invoice prices and were appraised at the invoice unit prices, plus 25 per centum, plus packing.

Plaintiff claims that no export value exists for this merchandise; that the proper basis of valuation is foreign value; and that such value is the foreign seller's price (net) at Oporto, Portugal, to all purchasers for resale for home consumption, plus cost of packing, as invoiced.

When this case was first before me, I held that the weight of the evidence supported plaintiff's claim that there was no export value

for this merchandise. However, the evidence presented was insufficient to establish which, if either, of two sets of prices, one designated "Wholesale Price in Portugal" and the other "Retail Price at Studio Shop," represented the prices at which the merchandise was freely offered to all purchasers for home consumption in the usual wholesale quantities and in the ordinary course of trade.

At the rehearing, plaintiff offered in evidence an affidavit of Alberto da Silva França, a partner of the manufacturing firm, sworn to September 5, 1958 (plaintiff's exhibit 4), and a set of invoices covering merchandise purchased by Alberto de Albuquerque Domingos between May 15, 1952, and October 11, 1955 (plaintiff's collective exhibit 5).

The affidavit refers to the schedules attached to the previous affidavit and states:

It is there in price list of 14 Nov. 1957 stated prices to wholesale from our factory to wholesale customers as we only sell the items in question at the wholesale price to firms legally established whose aim is to dedicate themselves to the sale of religious items in Portugal. To all other people in Portugal we sell at prices which are therein listed at retail price at studio shop. * * *

\* \* \* Our wholesale customers customarily buy from twenty to forty statues each order. Our retail customers customarily buy one statue. It is not our policy to vary our prices to retail customers or to wholesale customers because of the quantities they purchase. Our prices to all wholesale customers in Portugal are lower because they are dedicated to sell the religious goods to the public. Our prices to wholesale customers in other countries are determined by other conditions.

It is also stated in the affidavit that one of the firm's main wholesale customers is Alberto de Albuquerque Domingos of Lisbon. The invoices to this purchaser, contained in plaintiff's collective exhibit 5, indicate that the total quantities of various statues and other religious items in each shipment ranged from 22 to 74, but that the individual items were sold principally in quantities of 1 or 2.

It is evident from the statements in the affidavit of Alberto da Silva França, quoted above, that this merchandise is sold at the "Wholesale Price in Portugal" only to certain selected firms "whose aim is to dedicate themselves to the sale of religious items in Portugal," that all other purchasers pay the "Retail Price at Studio Shop," and that the prices do not vary with the quantity purchased.

It is well settled that the price at which merchandise is offered and sold to a limited number of favored customers or to wholesalers only does not establish market value in accordance with the tariff act, since such price is not one at which the merchandise is freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade. *G. Gennert (Inc.)* v. *United States*, 18 C.C.P.A. (Customs) 12, T.D. 43973; *United States* v. *A. S. Neuberger and American*

*Glanzstoff Corp.*, 19 C.C.P.A. (Customs) 96, T.D. 45241; *Stone & Downer Co.* v. *United States*, 21 C.C.P.A. (Customs) 479, T.D. 46958; *United States* v. *Mexican Products Co.*, 28 C.C.P.A. (Customs) 80, C.A.D. 129. The criterion is not the price to wholesalers, but the price to all purchasers in the usual wholesale quantities. "The law is not concerned with the persons who buy, but the manner in which they buy." *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, 147, T.D. 42216.

In the instant case, therefore, the so-called "Wholesale Price in Portugal," at which this merchandise is offered to certain wholesalers only, cannot be held to represent the foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

It is stated in the affidavit, plaintiff's exhibit 4, that the prices do not vary with the quantities purchased. Therefore, no question of usual wholesale quantity can arise. *Jenkins Brothers* v. *United States*, 25 C.C.P.A. (Customs) 90, T.D. 49093. Furthermore, it appears from the invoices in plaintiff's collective exhibit 5 that even the selected wholesalers purchased many of the individual items in quantities of one.

In the instant case, while all purchasers could not buy at the wholesale price, there is nothing to indicate that all purchasers, including wholesalers, could not have bought at the retail price. This case is not one where purchasers were divided into different categories with a different price for each, but one where the merchandise was freely offered to all purchasers at the retail price with only certain customers receiving a lower price. In the former situation, it has been held that no one price may be selected as the freely offered price to all purchasers. *United States* v. *Empire Distributors, Successor to Empire Wholesalers*, 33 Cust. Ct. 568, A.R.D. 47; *United States* v. *F. W. Myers Company, Inc.* (*F. H. Leggett & Co.*), 33 Cust. Ct. 578, A.R.D. 49; *A. Newberg & Co., Inc.* v. *United States*, 41 Cust. Ct. 612, A.R.D. 92. In the latter situation, the price at which the merchandise is offered to selected customers is disregarded, and dutiable value is based on the price at which the merchandise is freely offered to all purchasers. *Stone & Downer* v. *United States, supra*; *United States* v. *A.S. Neuberger and American Glanzstoff Corp., supra*; *Adolph Goldmark & Sons Corp.* v. *United States*, 22 C.C.P.A. (Customs) 358, T.D. 47378; *American Shipping Co.* v. *United States*, 29 C.C.P.A. (Customs) 250, C.A.D. 198.

Thus, in the instant case, the foreign value of the merchandise is represented by the prices at which the items are freely offered to all purchasers for home consumption, namely, the prices designated as

"Retail Price at Studio Shop," as set forth in schedule "A," hereto attached.

On the record presented, I find as facts:

1. That the merchandise involved in this case consists of religious statuary and miniature silver crowns, exported from Portugal between July 4, 1952, and March 18, 1957.

2. That said merchandise was entered in United States dollars at the invoice prices and was appraised at the invoice unit prices, plus 25 per centum, plus packing.

3. That there was an agreement between the manufacturer or supplier and the Ave Maria Institute, whereby the latter, through the importer, was made the exclusive representative of the former in the United States.

4. That the merchandise was offered for home consumption to "firms legally established whose aim is to dedicate themselves to the sale of religious items in Portugal" at prices set forth on the schedules attached to plaintiff's exhibit 1, designated as "Wholesale Price in Portugal."

5. That the merchandise was freely offered to all purchasers for home consumption at prices set forth on said schedules, designated as "Retail Price at Studio Shop."

6. That the prices did not vary with the quantity purchased.

I conclude as matters of law:

1. That there is no export value for this merchandise, as that value is defined in section 402 (d) of the Tariff Act of 1930.

2. That foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis for the determination of the value of this merchandise.

3. That such values are represented by the prices designated in plaintiff's exhibit 1 as "Retail Price at Studio Shop," as set forth in schedule "A," attached hereto, plus cost of packing, as invoiced.

Judgment will be rendered accordingly.